IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| RENEE A.B.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | Case No. 4:20-cv-04253-JEH |

## Order and Opinion

Now before the Court is the Plaintiff Renee A.B.'s Motion for Summary Judgment (Doc. 12) and the Commissioner's Motion for Summary Affirmance (Doc. 15).[1] For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[2]

**I**

Renee A.B. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on October 10, 2017, alleging disability beginning on June 18, 2016. Renee subsequently amended her alleged onset date to June 1, 2017. Her claims were denied initially on December 22, 2017 and upon reconsideration on May 9, 2018. Renee filed a request for hearing concerning her DIB and SSI applications which was held on January 10, 2020 before the Honorable

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 10, 11).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 7) on the docket.

Christal Key (ALJ). At the hearing, Renee was represented by an attorney, and Renee and a vocational expert (VE) testified. Following the hearing, Renee's claims were denied on April 1, 2020. Her request for review by the Appeals Council was denied on October 7, 2020, making the ALJ's Decision the final decision of the Commissioner. Renee timely filed the instant civil action seeking review of the ALJ's Decision on December 4, 2020.

II

At the hearing, Renee testified to how she typically spent her days, her previous work, and her medical conditions. She stated that her migraines, coronary artery disease, numbness, and pain through her right shoulder down to her fingers on her right hand kept her from returning to work full time. She also said she experienced pain in her head, neck, right shoulder, and the back part of her right shoulder down to her fingertips. Renee testified at some length regarding her right shoulder, arm, and hand symptoms including that her grip strength was affected, four of her fingers went numb within seconds of writing, it hurt to raise her right arm above shoulder level, her right shoulder pain level was an eight out of 10 since 2016, and her right arm and hand felt heavy.

The VE was next questioned. The VE testified that the first hypothetical individual the ALJ presented to her could perform Renee's past work as cashier/checker and central supply worker but could not perform her past work as a fast-food worker "due to the reaching and handling being constant." AR 68-69. The VE identified the following jobs a hypothetical individual limited to light exertional level work with additional postural, manipulative, and environmental limitations could perform: housekeeper (78,797 jobs nationally); cafeteria attendant (66,109 jobs nationally); and electrical assembler (96,357 jobs nationally). AR 69. The second hypothetical individual the ALJ presented to the VE could not perform Renee's past work. AR 70. The VE identified the following jobs a

hypothetical individual limited to sedentary exertional level work with additional postural, manipulative, environmental, and mental limitations could perform: stuffer (101,176 jobs nationally); document preparer (273,368 jobs nationally); and lens inserter (72,538 jobs nationally). AR 70.

### III

At Step Two of the five-step disability analysis, the ALJ found Renee had the following severe impairments: status post cervical fusion; obesity; migraine headaches; coronary artery disease; osteoarthritis of the right shoulder and left knee; left plantar fasciitis; anxiety; and depression. AR 16. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only occasionally lift/carry/push/pull 20 pounds; frequently lift/carry/push/pull 10 pounds; sit for up to 6 hours; stand for up to 6 hours; walk for up to 6 hours; occasionally reach overhead with the right upper extremity; frequently reach in all other directions with the right upper extremity; only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and crawl; never work at unprotected heights or operate moving mechanical parts; never be exposed to concentrated levels of dust, odors, fumes or pulmonary irritants; never be exposed to extreme cold or extreme heat; be exposed to up to moderate noise; and is limited to performing only simple, routine and repetitive tasks; make simple work-related decisions; never interact with the public; and have only occasional changes in a routine work setting.

AR 18-19. At Step Five, the ALJ determined upon "[c]onsidering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." AR 25. The ALJ detailed that she was required to consider Renee's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines (Grids). The ALJ further detailed the circumstances when the Grids direct a conclusion of either

"disabled" or "not disabled" versus when the Grids are to be used as a framework for decision-making as to disability. AR 25. The ALJ explained that she sought testimony from a VE in order to "determine the extent to which [Renee's] limitations erode[d]" Renee's occupational base. The ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles, and, thus:

> Based on the testimony of the [VE], the undersigned concludes that, considering the claimant's age, education, work experience, and [RFC], the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

AR 26.

## IV

Renee argues: 1) the ALJ failed to meet her burden at Step Five; and 2) the RFC determination was not supported by substantial evidence.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind

might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566; 416.966.[3] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520; 416.920. In the following order, the ALJ must evaluate whether the claimant:

1)  currently performs or, during the relevant time period, did perform any substantial gainful activity;

2)  suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3)  suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

---

[3] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

    4)    is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

    5)    is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

    The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

    In the instant case, Renee claims error on the ALJ's part at Steps Four and Five.

A

    Renee first argues that the ALJ erred at Step Five where her ultimate RFC determination was never proposed to the VE as a hypothetical "so there is no way to know what jobs, if any, would exist in the national economy." Plf's MSJ (Doc. 12 at pg. 9). The Commissioner counters that the ALJ reasonably relied on VE testimony to find a significant number of jobs accommodated Renee's work capacity. Of course, at Step Five is the only place where it is the *Commissioner's* burden to show the claimant is not disabled by showing that there are a significant number of jobs that the claimant is capable of performing. *Liskowitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009) (citing 20 C.F.R. § 404.1560(c)(2)). Here, the ALJ, as is common, used a VE to assess whether there were a significant number of jobs in the national economy that Renee could do. Thus, it was imperative that the hypothetical posed to the VE incorporated all of Renee's limitations supported by the medical record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("If

the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record"). The ALJ proceeded in a most unusual way at Step Five, and the Court is unconvinced as a result that the Commissioner sustained her Step Five burden.

Of significance are the first two hypotheticals the ALJ asked the VE at the hearing. The first asked the VE to consider a hypothetical individual of:

> the claimant's age, education, the past jobs that you've described for us, who can perform work at the light exertional level. Can occasionally reach overhead with the right extremity and frequently reach in all other directions; can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and crawl; can never work at unprotected heights; never operate moving mechanical parts; never exposed to concentrated levels of dust, odors, fumes, or pulmonary irritants; never exposed to extreme heat or extreme cold; and can work up to the moderate noise level.

AR 68. The VE testified to the jobs of housekeeper, cafeteria attendant, and electrical assembler. AR 69. The ALJ next asked the VE to:

> assume all the same (INAUDIBLE) from hypothetical one into hypothetical two, but in the second hypothetical, I'd like you to assume the individual is someone who could work at the sedentary exertional level; can frequently handle with the right hand; is limited to simple, routine, and repetitive tasks; is limited to simple work-related decisions; can never interact with the public; and can have only occasional changes in the routine work setting.

AR 70. The VE testified to the jobs of stuffer, document preparer, and lens inserter. Neither of those hypotheticals appeared as the ALJ's final RFC assessment in her Decision. Instead, the ALJ assessed Renee's RFC to be at the light exertional level (hypothetical one) with, among other limitations, "occasionally reach overhead with the right upper extremity" (hypothetical one), "limited to performing only

7

simple, routine and repetitive tasks," (hypothetical two), "make simple work-related decisions" (hypothetical two), "never interact with the public" (hypothetical two), and "have only occasional changes in a routine work setting" (hypothetical two). AR 18-19. At Step Five, the ALJ listed as evidence that Renee was capable of "making a successful adjustment to other work that existed in significant numbers in the national economy" the jobs that the VE identified at the *sedentary* exertion level.

The ALJ explained how she assessed the evidence to reach her Step Five conclusion as follows:

> If the claimant had the [RFC] to perform the full range of sedentary work, which is even more limiting than the [RFC] of light, above, a finding of "not disabled" would still be directed by Medical-Vocational Rule 201.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] then asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]. The [VE] testified that given all of these factors and in response to a more limiting hypothetical provided by the undersigned, the individual would be able to perform the requirements of [stuffer, document preparer, and lens inserter]. The number of jobs for any one occupation is significant by itself.

AR 26. There are glaring errors with the ALJ's reasoning. First, the ALJ never did present the VE with her ultimate RFC determination – she presented parts of it in two separate instances involving two different exertion levels. Second, confusingly, the ALJ acknowledged Renee was not even capable of the full range of sedentary work but explained she therefore asked the VE questions to determine the extent to which Renee's additional limitations eroded the "unskilled *light* occupational base." AR 26. Third, she ultimately relied upon job numbers for

sedentary jobs even though she determined Renee was capable of performing light jobs.

The Commissioner argues the Court should rest assured as the jobs identified constituted the requisite significant number of jobs in the national economy. The actual numbers cited are beside the point. They don't remedy the actual error at Step Five – the ALJ's failure to elicit testimony from the VE that a *single* hypothetical person with *every single one of* Renee's determined/supported limitations as set forth in the RFC finding at Step Four was capable of performing the jobs of stuffer, document preparer, or lens inserter. The Court remains stuck on the ALJ's leap from her reliance on what the Grids dictate to the impediment of Renee's additional limitations on sedentary work and then to the erosion of Renee's additional limitations on the light occupational base. The ALJ's statements just do not add up.

A closer reading of the hearing transcript only underscores the Court's concern that the ALJ did not sustain her burden at Step Five. The ALJ in her Decision obviously believed that the VE testified to sedentary jobs a hypothetical individual could do who could only occasionally reach overhead with the right extremity and frequently reach in all other directions with the right upper extremity and who could frequently handle with the right hand. But after the ALJ questioned the VE, Renee's attorney asked the VE:

> Q. What about would lifting at less than 10 pounds affect the jobs you identified at [hypothetical] number two?
> A. Yes, they would not be able to do those jobs.
> Q. Likewise, if reaching and handling was limited to occasional, would that affect the jobs you identified?
> A. They would not be able to do the jobs I cited.

AR 71. This exchange suggests two things: 1) Renee's attorney did not understand the ALJ's second hypothetical to include (as a carryover from her first

hypothetical) a limitation to occasional reaching overhead with the right extremity; and 2) the VE did not understand the ALJ's second hypothetical to include (as a carryover from her first hypothetical) a limitation to occasional reaching overhead with the right extremity. The Court also notes that the ALJ did *not* clearly specify in the first hypothetical, though she did in the Decision's RFC determination, that Renee was limited to "frequently reach[ing] in all other directions *with the right upper extremity*."[4] AR 18 (emphasis added). If, in fact, the VE confined her answer to hypothetical two based upon her understanding that the individual was only limited to frequent handling with the right hand (and no further limitation), the ALJ's reliance upon the VE's testimony to support her Step Five conclusion is even more tenuous. *See Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (faulting the ALJ for presenting the VE with a hypothetical that did "nothing to ensure that the VE eliminated from her responses those positions that would prove too difficult for someone" with the claimant's mental limitations). The ALJ clearly assessed Renee's subjective statements as to her arm and hand limitations and mental limitations to be supported by the record as a whole, at least to some degree, given the limitations the ALJ included in the RFC. It was therefore incumbent upon the ALJ to ensure that those limitations were, in fact, fully conveyed to the VE.

It is true, as the Commissioner points out, that Renee does not cite to any legal authority in support of her specific position. Though she does have the benefit of the authority, cited *supra*, that if an ALJ relies on a VE's testimony, the hypotheticals presented to the VE must include all of a claimant's limitations that are supported by the record. *See also Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) (underscoring that a VE's testimony can satisfy the Commissioner's Step

---

[4] *Compare* AR 68 (ALJ presenting hypothetical individual who "[c]an occasionally reach overhead with the right extremity and frequently reach in all other directions; . . . .")

Five burden only if that testimony is reliable). The Commissioner, on the other hand, attempts to argue away any error by the ALJ with citation to 20 C.F.R. § 404.1567(b). That provision defines "light work" and provides, in relevant part, "If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b); 416.967(b). The Commissioner states matter-of-factly that Renee has not suggested she had such additional limiting factors as loss of dexterity or inability to sit for long periods of time and that the record confirms she had normal examination findings in manual functioning and sitting ability. That may be true, but the Commissioner does not cite to any authority that applied Section 404.1567(b) to nuanced facts such as appear here. That provision states simply that if a claimant can do light work, she can also do sedentary work. That provision makes no mention of how it is to apply in instances when the light occupational base is eroded by additional limitations, and it certainly does not make mention of how it is to apply in instances when an ALJ mixes and matches exertion levels plus additional limitations.

The error that cannot be explained away by Section 404.1567(b) is that the ALJ elicited testimony from the VE based upon two different hypothetical individuals – one limited to light work and one limited to sedentary work. It was the ALJ who decided, *after* the hearing, to pass off the VE's testimony regarding two different hypothetical individuals as testimony regarding a single hypothetical individual. Simply put, the ALJ relied upon VE testimony regarding job numbers that the VE did not actually provide because the VE was not actually presented with a hypothetical individual with the RFC finding the ALJ ultimately settled on. Under the discrete circumstances of this case, the Court does not find that substantial evidence supports the ALJ's Step Five findings. *Compare Weatherbee*, 649 F.3d at 572 (finding that substantial evidence supported the ALJ's

Decision where the ALJ found a significant number of jobs existed in the national economy as identified by the VE).

B

It is unnecessary for the Court to address Renee's second argument regarding the ALJ's assessment of her RFC. Even assuming the ALJ made no error at Step Four, this case must still be remanded due to the ALJ's failure to sustain her burden at Step Five. It would, however, behoove the ALJ on remand to remain cognizant of Renee's challenges to the RFC assessment.

V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 12) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc. 15) is DENIED, and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that this case is remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four."

*It is so ordered.*

Entered on March 18, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE